# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| CONSTANCE M. GRIFFITH, ) <br> JENNIFER S. BROWN, and ) <br> TERESA M. CUMMINGS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JOHN T. PEPMEYER, personally; ) <br> JOHN T. PEPMEYER, not personally, ) <br> but in his official capacity as State's ) <br> Attorney of Knox County, Illinois; ) <br> KNOX COUNTY, Illinois, a municipal ) <br> corporation, and ) <br> STATE OF ILLINOIS[1], ) <br> ) <br> Defendants. ) | No. 07-CV-1130 |

## OPINION

Plaintiffs pursue claims based on Defendant Pepmeyer's alleged sexual harassment of them when they worked at the Knox County State's Attorneys Office. Pepmeyer denies the allegations.[2]

---

[1] The State of Illinois was terminated as a party on November 14, 2007. (d/e 25).

[2] This case is consolidated for discovery purposes with Stone v. Pepmeyer, 07-1198 (C.D. Ill.), in which former assistant state's attorneys pursue retaliation claims against Pepmeyer.

Defendants Pepmeyer and Knox County have filed motions to compel Plaintiffs Griffith and Brown to answer deposition questions regarding Brown's prior relationship with a federal pretrial detainee and subsequent investigations into that relationship.  For the reasons below, the Court concludes that the information could be relevant to establishing part of Pepmeyer's defense, and therefore, grants the motions.

**Standard**

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–. . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  The discovery of relevant information can be limited if, for example, the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient," or the "burden . . . outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).  The party opposing discovery has the burden of proving that the requested discovery should be disallowed. <u>Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.</u>, 132 F.R.D. 204, 207 (N.D. Ind. 1990).  "A request for discovery should be considered relevant if there

is 'any possibility' that the information sought may be relevant to the subject matter of the action." Id. at 212 (quoted cite omitted).

## Background

Plaintiff Brown worked as a correctional officer at Knox County Jail in 2004 and early 2005, after which she left the Jail and began working at the Knox County State's Attorney's Office. Plaintiffs attach to their response an Illinois State Police investigative report dated May, 2007, which recounts an interview with a Knox County Lieutenant, Keith Rickard (the "Rickard report"). According to the Rickard report and Pepmeyer, when Plaintiff Brown was a correctional officer at the Jail she had several telephone conversations with Arthur Bolds, a federal detainee who was incarcerated in the Jail. (d/e 57, ¶ 8; d/e 59, Ex. 1). Rickard and an investigator downloaded the phone conversations between Bolds and Brown, which Rickard described as "'phone sex.'" (d/e 59, Ex. 1. P. 1). Rickard reportedly thought that an investigation should have been conducted, but his superiors told him "'[t]here was nothing there, only fraternization.'"
(d/e 59, Ex. 1). The recordings were purportedly forwarded to the Sheriff and Paul Mangieri, then Knox County's State's Attorney, who, according to

the Rickard report, instructed that he did not want the incident explored further. Id.

In January, 2007, Defendant Pepmeyer became Knox County's State's Attorney. According to the Rickard report, in January, 2007, at a party celebrating Paul Mangieri's judicial appointment, Pepmeyer asked Rickard "about Mangieri and 'three way' sex", apparently referring to Bolds and Brown, but it is not clear. (d/e 59, Ex. 1, p.1). Rickard replied that he "'had heard the rumors'" and told Pepmeyer about the recorded phone conversations. Id.

Plaintiff Griffith was also interviewed by the Illinois State Police in October, 2007, regarding her allegations against Pepmeyer. (d/e 58, Ex. 1). According to that report,

> [s]ometime just prior to Brown returning to work on February 13, 2007,[3] Pepmeyer asked Griffith about Brown and the KCJ. He asked if there was a file or video in the SAO. Griffith told him she did not know. Griffith did not tell Brown that Pepmeyer had asked.

(d/e 58, Ex. 1, p. 2)(the "Griffith report").

In March, 2007, Plaintiffs filed union grievances against Pepmeyer regarding his alleged sexual harassment. According to the Rickard report,

---

[3]Brown had apparently been on maternity leave.

Pepmeyer called Rickard on March 17, 2007 and asked for a copy of the recorded conversations, but Rickard could not find the CD. (d/e 59, Ex. 1, p. 2). Pepmeyer reportedly became angry and remarked that he would "hate to see this come down on you and Jim." Id. Rickard unsuccessfully tried to obtain a copy of the CD from the Jail Administrator.

## Analysis

Defendants seek to explore the nature of Brown's relationship with Bolds, and the subsequent investigations into that relationship. Specifically, defendants seek to compel Plaintiffs Brown and Griffith to answer deposition questions about: 1) Brown's relationship with Bolds; 2) the taped conversations between Brown and Bolds; and, 3) the "investigation of the Illinois State Police and Federal Bureau of Investigation into possible illegal actions by employees and officials of Knox County and the Knox County State's Attorney's Office." (d/e 57, ¶ 4).

Brown argues that the 2004-05 incident involving Bolds is irrelevant to her claims of sexual harassment against Pepmeyer. She asserts that an investigation of her alleged "improper fraternization" with Bolds was already conducted in 2005 by the State's Attorney's Office and the Sheriff's

Department, and she "was cleared of any wrongdoing."[4] (d/e 59, ¶ 7).  She asserts that the incident has no relevance to this action, since Pepmeyer did not become the State's Attorney until January, 2007, more than a year after she was cleared.

Pepmeyer counters that he needs the information to defend himself. He maintains that Brown "fabricated the allegations of sexual harassment against him, in part, in order to divert his attention from using the office of State's Attorney to investigate her own possible felonious conduct during her time as a Knox County Corrections Officer." (d/e 57, ¶ 11).  He contends that he "believed that the recordings could contain evidence of prosecutable criminal conduct on the part of Jennifer Brown." (d/e 57, ¶ 9). He asserts that his efforts to acquire the recordings to investigate were "met with resistance." Id.

In the Court's view, if Pepmeyer did begin poking around about the incident when he took office, and Brown knew it, that might support Pepmeyer's assertion that Brown had a motive to fabricate the sexual harassment allegations—the motive being to throw Pepmeyer off her trail

---

[4]The Rickard report does not necessarily support Brown's assertion that she was cleared of all wrongdoing.  An inference arguably arises from that report that the incident was swept under the rug.  In any event, the issue is immaterial for purposes of this order.

and avoid the potential embarrassment and trouble that Pepmeyer's investigation might resurrect.

Brown contends that, even if this defense is plausible, only the extent of Pepmeyer's investigation and Brown's knowledge of it would be relevant, not the details of her relationship with Bolds.  The Court agrees that Pepmeyer's investigation and Brown's knowledge of it are certainly relevant.  However, the nature and extent of Brown's relationship with Bolds is also relevant because it goes to the strength of Brown's alleged motive to lie.  As Pepmeyer puts it, "the degree of impropriety involved in Brown's relationship with Bolds directly correlates to the degree of motivation she would have to take action to make sure Pepmeyer did not or could not investigate the nature of the relationship."  (d/e 62, p.3). Evidence that Pepmeyer's investigation might have uncovered significant professional improprieties beyond "fraternization" would tend to support Pepmeyer's defense that Brown fabricated her allegations against him in order to stop his investigation.  See Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence).  Conversely, if

nothing improper occurred, Brown would have had no reason to worry about Pepmeyer's investigation.

Plaintiffs correctly point out that Pepmeyer offers no evidence that Brown *knew* about Pepmeyer's inquiries before she made her allegations against Pepmeyer. According to Plaintiffs, Pepmeyer did not begin his quest for the CD until *after* they filed their accusations against him. The Rickard report arguably supports that assertion. However, both reports also support an inference that Pepmeyer knew about the recordings when he took office and that he tried to obtain them as early as February, 2007.[5] In any event, now is not the time to resolve competing inferences about knowledge and motive. A developed factual record may show that Pepmeyer's defense holds no water, but that decision belongs at summary judgment or trial. Pepmeyer is not required to prove his defense before seeking discovery on it. On the current record, the defense is plausible enough to allow Pepmeyer to explore it through discovery.

---

[5]The Rickard investigative report states that Pepmeyer was told of the incident in January 2007, and the Griffith investigative report states that Pepmeyer asked Griffith for the recorded conversations in February 2007. Griffith reported that she had not told Brown about Pepmeyer's inquiry, but that does not rule out the possibility that Brown may have learned from a different source.

Plaintiffs also assert that the deposition questions are duplicative of the Illinois State Police reports that have already been produced. According to Plaintiffs, Defendants received "several voluminous" reports in which investigators questioned Brown about "her conduct" as a correctional officer. (d/e 59, p.4). Pepmeyer, though, maintains that none of those reports recount any questioning of Brown about the "nature and circumstances of her relationship with Arthur Bolds." (d/e 62, p.3). The Griffith and Rickard reports also do not discuss the incident in any detail. Accordingly, Plaintiffs have not established that Pepmeyer's questioning is duplicative of any other discovery.

Brown also posits that evidence of her relationship with Bolds would be inadmissible under Federal Rule of Evidence 412, which generally prohibits the admission of a victim's sexual behavior/predisposition if that victim is alleging sexual misconduct. Rule 412 does allows its admission in a civil case, though, if otherwise allowed under the evidentiary rules and its "probative value substantially outweighs the danger of harm . . . ." Fed. R. Evid. 412(b)(2). Brown argues that her relationship with Bolds has no probative value and would only embarrass and intimidate her and confuse and prejudice a jury.

At this point, the Court cannot conclude confidently that the information Pepmeyer seeks is inadmissible.  Pepmeyer does not appear to intend to offer the evidence to prove Brown's sexual behavior or predisposition, but instead to prove her motive to fabricate the allegations against Pepmeyer.  Pepmeyer does not seek the information to show that Brown welcomed or invited his alleged harassment; he seeks it to show that Brown wanted to stop his inquiries into her behavior as a correctional officer.  *Compare with* Priest v. Rotary, 98 F.R.D. 755 (D.C. 1983)(plaintiff's sexual history for past ten years not relevant to show plaintiff's alleged desire to retaliate because there was no connection made between the two)(case cited by Plaintiffs).  The sexual nature of the relationship is incidental; it is the extent of the professional impropriety of the conduct that establishes Brown's motive to lie, not its sexual nature.

In sum, the Court concludes that the information Pepmeyer seeks is arguably relevant and admissible, or reasonably calculated to lead to admissible evidence.  Whether that information is ultimately relevant and admissible at trial is a question for another day.

IT IS THEREFORE ORDERED THAT Defendants' motions to compel are granted (d/e's 57, 58).

ENTER:    November 13, 2009

_____s/ Byron G. Cudmore_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE